OPINION OF THE COURT
William H. Keniry, J.
In this special proceeding, petitioner, Keith C. St. John, contends that a significant number of absentee ballots cast for the office of member of the Common Council/Alderman, Second Ward, City of Albany, New York, should not be counted *325 by the Board of Elections of the County of Albany because, it is alleged, such ballots were obtained and cast contrary to the provisions of the Election Law. Petitioner seeks an order enjoining and restraining the Board of Elections and the other respondents named from opening and counting the ballots. Arthur Scott, petitioner’s opponent in the Democratic Party primary race, appeared in person and by counsel upon the return date.
The crux of the matter concerns alleged uncompleted application forms filed with the Board of Elections by applicants for absentee ballots for the primary election held on September 12, 1989. Following the close of the polls, a poll watcher for petitioner challenged in writing and personally approximately 160 absentee ballots.[1] These specific challenges were made in the Fourth Election District of the Second Ward. The gravamen of the challenge of 108 ballots is that the applicants for such ballots failed to state therein the name of his or her medical practitioner or Christian Science practitioner. In 19 other cases it is contended that the voters were actually available to vote in person on primary day and therefore should not have voted the absentee ballots previously obtained.[2]
The right to vote by absentee ballot stems from article II, §2 of the NY Constitution which allows the Legislature to provide a manner in which qualified voters who may be absent from their county on election day or who may be unable to appear personally because of illness or physical disability may vote. The specific manner for voting by absentee ballot is governed by the provisions of title 4 of article 8 of the Election Law.
Section 8-400 of the Election Law provides in pertinent part as follows:
"8-400. Absentee voting; application for ballot
"1. A qualified voter may vote as an absentee voter under this chapter if, on the occurrence of any primary election, *326 special election called by the governor, general or New York city community school board district or city of Buffalo school district election, he will be:
"(a) unavoidably absent from the county of his residence, or, if a resident of the city of New York absent from said city, because his duties, occupation, business, or studies require him to be elsewhere on the day of election; or
"(b) absent from such county or city because he is on vacation elsewhere on the day of election; or
"(c) unable to appear personally at the polling place of the election district in which he is a qualified voter because of illness or physical disability, whether permanent or temporary, or because he will be or is a patient in a hospital; or * * *
"(e) absent from the county of his residence, or if a resident of the city of New York, absent from said city, because of his accompanying a spouse, parent or child who would be entitled to apply for the right to vote by absentee ballot if a qualified voter”.
Section 8-400 (3) of the Election Law specifies what information the application for absentee ballot must contain and the provisions which are pertinent to this proceeding are as follows:
"3. The application for an absentee ballot when filed must contain in each instance the following information * * *
"(c) A statement, as appropriate, that on the day of such election the applicant expects in good faith to be in one of the following categories:
"(i) unavoidably absent from the county of his residence, or if a resident of the city of New York absent from said city, because his duties, occupation, business or studies require him to be elsewhere on such day, and where such duties, occupation, business or studies are not of such a nature as ordinarily to require such absence, a statement briefly describing the special circumstances requiring such absence and the dates when he expects to begin and end such absence; or
"(ii). absent from the county of his residence, or if a resident of the city of New York absent from said city, because he will be on vacation elsewhere on such day, the dates upon which he expects to begin and end such vacation, the place or places where he expects to be on such vacation, the name and address of his employer, if any, or if self-employed or retired a statement to such effect; or
*327 "(iii) ill or physically disabled; that he has been advised by his medical practitioner or Christian science practitioner, giving said practitioner’s name and address, that he will not be able to go to his polling place for such election, and whether said illness is permanent or temporary; if he expects to be a patient in a hospital he shall state the name and address of said hospital; or * * *
"(vi) absent from the county of his residence, or if a resident of the city of New York absent from said city, because of his accompanying his spouse, parent or child who falls within one of the foregoing categories; a statement that the applicant resides in the same election district as such spouse, parent or child, the name and address of such spouse, parent or child, and, unless the application accompanies the application of such spouse, parent or child, the information as to the status of such spouse, parent or child required by the applicable category.”
Respondents in their answer set forth several defenses to the petition. Their fourth affirmative defense raises an issue that should be addressed at the outset. The respondents therein contend that a previous proceeding brought in this matter two weeks ago should constitute a bar to this proceeding. There the present petitioner sought an order enjoining the Board of Elections from distributing the absentee ballots to each polling place for opening, making many of the same arguments advanced in this proceeding. Supreme Court held that such an injunction would deprive persons of their right to challenge the ballots at the polling place. The petition was denied. It seems obvious that the basis of denial was that the proceeding was premature. Now specific challenges have taken place at the opening of the ballots and the controversy is ripe for review (see, Matter of O’Shaughnessy v Monroe County Bd. of Elections, 15 AD2d 183,188).
Getting to the heart of the matter at hand which apparently presents a legal issue of first impression, we have at least 173 voters who filed applications for absentee ballots from the Second Ward. In the application forms that they filed they each gave reasons which were permissible according to the Election Law. The applications were accepted by the Board of Elections. Thereafter the voters were provided with ballots. At least 117 of the 173 have voted by absentee ballot. Another number, up to a possible 56, as of this writing, could be timely postmarked and in the mails.
*328 Are these voters to be disfranchised because their applications as accepted and filed failed to contain the name of their medical doctor or Christian Science practitioner or because their health or plans of activities changed? I think not.
The right to vote, either in person or by absentee ballot, is one of a citizen’s most hallowed rights. When a citizen in good faith and in reliance upon a long-standing procedure of allowing voting by absentee ballot files an application and thereafter receives an absentee ballot which is timely cast, such citizen is entitled to rely upon the integrity of the process and should not suffer the loss of his or her franchise because of any subsequently uncovered failure of the Board of Elections to properly scrutinize such voter’s initial application (see, Shells v Flynn, 252 App Div 238, affg 164 Mise 302, affd 275 NY 446). Section 8-402 of the Election Law empowers Boards of Elections to investigate applications for absentee ballots and if it is found by such board that an applicant is not entitled to an absentee ballot, the board is mandated to "immediately notify the applicant, giving him the reason for such rejection” (Election Law § 8-402 [5]). Such determination must be made "not later than the day before the election for which a ballot is first requested, or if such ballot is to be sent by mail, such determination shall be made at a time which will afford sufficient time for the transmission of the ballot to the voter, one secular day for the voter to mark such ballot and execute the statement of absentee voter, and time for the return of such ballot to the board of elections by the deadline for its receipt. If the board cannot complete its investigation within the time provided for herein, it shall, if it finds the voter to be duly registered, deliver to such applicant an absentee ballot” (Election Law § 8-402 [4]). Section 8-406 of the Election Law states that if the Elections Board finds that the applicant is a qualified voter of the election district and that his statement is sufficient, it is required to mail or deliver to him a ballot.
This court will not assume that the Albany County Board of Elections failed to make the required determinations as to sufficiency in this case. If petitioner feels that the Board of Elections failed to perform a duty enjoined upon it by law or that its determinations were made in violation of lawful procedure, he has a remedy against the Board of Elections (see, CPLR art 78).
This court will not countenance a result which would effectively disfranchise 117 qualified voters who relied in good *329 faith upon the procedures mandated by the Election Law and the actions of the Board of Elections of Albany County and duly cast the absentee ballots supplied to them. If the relief sought is granted on the basis that the Board of Elections failed to properly perform its statutory duties, these 117 (and possibly more) voters have no recourse to contest such determination and will have been stripped of the right to exercise one of their most valued and treasured civil rights.
The petition is denied, without costs.

. The election inspectors sustained 11 of the petitioner’s objections and voided such ballots. Prior to the issuance of a verbal restraining order, later reduced to writing, granted by a Justice of this court at 1:15 a.m. on September 13, 1989 which halted the opening of the absentee ballots at the polling place, approximately 30 to 35 absentee ballots filed in the Fourth Election District were opened and counted over objection. No challenge is made in this proceeding to those ballots.

. Ten of these 19 ballots were also part of the 108 challenges; a total of 117 ballots are under challenge.